UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN GOLDBERGER,

                          Plaintiff,

        -v-

PXRE GROUP, LTD *et al.*,

                          Defendants.

Case No. 06-CV-3410 (KMK)

OPINION AND ORDER

STEVE KLEIN,

                          Plaintiff,

        -v-

PXRE GROUP, LTD *et al.*,

                          Defendants.

Case No. 06-CV-3440 (GBD)

OPINION AND ORDER

RALPH LOWRY,

                          Plaintiff,

        -v-

PXRE GROUP, LTD *et al.*,

                          Defendants.

Case No. 06-CV-3544 (KMK)

OPINION AND ORDER

ELDON H. VOSS,

                          Plaintiff,

        -v-

PXRE GROUP, LTD *et al.*,

                          Defendants.

Case No. 06-CV-4638 (KMK)

OPINION AND ORDER

<u>Appearances</u>:

Bradley Peter Dyer, Esq.
James Elliot Lahm, Esq.
Stull Stull & Brody
New York, New York
*Counsel for Plaintiff Stephen Goldberger*

Marc A. Topaz, Esq.
Richard A. Maniskas, Esq.
Tamara Skvirsky, Esq.
Schiffrin & Barroway, LLP
Radnor, Pennsylvania
*Counsel for Plaintiff Stephen Goldberger*

Jeremy Alan Lieberman, Esq.
Pomerantz Haudek Block Grossman & Gross LLP
New York, New York
*Counsel for Plaintiff Chad Condra*

Maurice William Munno, Esq.
Seward & Kissel LLP
New York, New York
*Counsel for Defendant John M. Modin*

David Spencer Karp, Esq.
Debevoise & Plimpton, LLP
New York, New York
*Counsel for Defendant Jeffrey L. Radke*

Bruce Domenick Angiolillo, Esq.
Simpson Thacher & Bartlett LLP
New York, New York
*Counsel for Defendant PXRE Group Ltd.*

KENNETH M. KARAS, District Judge:

On May 3, 2006, Plaintiff Stephen Goldberger filed a class action complaint against

Defendants PXRE Group, Ltd. ("PXRE"), Jeffrey L. Radke, and John M. Modin, alleging

violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated

thereunder.  Thereafter, three additional class action cases were filed, all of which contain nearly

identical claims against the same Defendants.  (*See* cases captioned above.)  The Court shall refer

to these four class-action cases as the "Class Actions."

Proposed lead plaintiffs the Campfield Group and Chad S. Condra ("Condra") have

respectively filed motions under 15 U.S.C. § 78u-4 seeking to consolidate the Class Actions, to

be appointed lead plaintiff, and to have their counsel appointed lead counsel.  For the reasons

stated herein, Plaintiffs' motions for consolidation are GRANTED.  Plaintiff Condra's motion to

be appointed lead plaintiff and to have his counsel appointed lead counsel is GRANTED.

Plaintiff the Campfield Group's motion to be appointed lead plaintiff and to have its counsel

appointed lead counsel is DENIED.

## I.  Background

Each of the Class Action Complaints involves similar allegations against the three

Defendants.  Briefly stated, the Complaints allege that between July 28, 2005 and February 16,

2006 (the "Class Period"), Defendants made materially false and misleading statements which

understated the losses incurred by PXRE, an insurance holding company, during the 2005

hurricane season.  According to putative Class Plaintiffs, the true impact of the 2005 hurricane

season was not revealed by PXRE until February 16, 2006, when PXRE increased the estimate of

its losses by approximately $300 million.  As a result of PXRE's allegedly false statements,

putative Class Plaintiffs, who purchased shares of PXRE during the Class Period, suffered losses.

Plaintiff Condra is an individual investor.  During the Class Period, Condra purchased

48,105 shares of publicly traded PXRE securities and sold 32,985 shares.  This constituted a net

purchase of 15,120 shares at a net expenditure of $199,001.  (Mem. of Law in Supp. of Chad S. Condra's Mot. for Consolidation of Related Class Action Compls., Appointment of Lead Pl. and Approval of Lead Counsel ("Condra's Mem. in Supp."), Ex. B.)  Condra's alleged approximate loss due to these holdings was $135,156.  (*Id.*)

The Campfield Group is a collection of seven individual investors, consisting of Michael Campfield, Vickie Campfield, Richard E. Grant, Joyce A. Grant, Ronald A. Bogusky, Elwood E. Juckem, and Peter Buza.  (Decl. of James E. Lahm in Supp. of the Mot. of the Campfield Group for Consolidation, Appointment as Lead Pl. and Approval of Selection of Lead Counsel ("Lahm Aff."), Ex. B.)  Michael and Vickie Campfield, and Richard and Joyce Grant, are married couples.  This familial relation aside, however, there is no evidence that any member of the Campfield Group has any relation to any other member of the group other than the fact that all allegedly suffered losses from their purchases of PXRE securities.  During the Class Period, the Campfield Group purchased a total of 20,000 shares of PXRE securities at a cost of $262,250. (*Id.* Ex C.)  No member of the Campfield Group sold any shares during that period.  Although there is some dispute as to the Campfield Group's total financial loss, both Movants agree that the Campfield Group lost in excess of $190,000 due to its purchases of PXRE securities during the Class Period.  (Mem. of Law in Further Supp. of Chad S. Condra's Mot. for Consolidation of Related Class Action Compls., Appointment of Lead Pl. and Approval of Lead Counsel 3 ("Condra's Mem. in Further Supp.").)

Both Movants are represented by law firms capable of serving as lead counsel.  Condra is represented by Pomerantz Haudek Block Grossman & Gross LLP, which has extensive experience in class and shareholder derivative actions.  (Condra's Mem. in Supp. Ex. C.)  The

4

Campfield Group is represented Stull, Stull & Brody.  It, too, has extensive relevant experience. (Lahm Aff. Ex. D.)

## II.  Discussion

### A.  Consolidation

Federal Rule of Civil Procedure 42(a) provides that when "actions involving common questions of law or fact are pending before the court, . . . it may order all the actions consolidated . . . ." Fed. R. Civ. P. 42(a).  "In determining the propriety of consolidation, district courts have broad discretion, and generally favor the view that considerations of judicial economy favor consolidation." *Barnet v. Elan Corp.*, 236 F.R.D. 158, 160 (S.D.N.Y. 2005) (internal quotations omitted).  "In securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (internal quotations omitted).

Here, each Class Action Complaint names the same Defendants and involves essentially the same public statements, securities, and legal issues.  Furthermore, all Parties, including Defendants, agree that Defendants will not be prejudiced by consolidation.  (*See* Def. PXRE Group Ltd.'s Mem. of Law in Resp. to Mots. by the Campfield Group and Chad S. Condra for Consolidation, Appointment as Lead Pl. and Approval of Selection of Lead Counsel 3.) Accordingly, in the interests of judicial economy, the above-captioned cases will be consolidated.

### B.  Lead Plaintiff

Having consolidated the Class Actions, the Court must next appoint a person or group of persons to serve as lead plaintiff.  Because the claims at issue are brought under the Exchange

Act, this process is governed by the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u-4. The PSLRA requires that the Court adopt a rebuttable presumption that the most adequate plaintiff is "the person or group of persons that—

> (aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "That the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient." *Cavanaugh v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 306 F.3d 726, 729 n.2 (9th Cir. 2002). Rather, the presumption can be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

> (aa)  will not fairly and adequately protect the interests of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

It is undisputed that both Condra and the Campfield Group have made motions sufficient to satisfy section 78u-4(a)(3)(B)(iii)(I)(aa); and neither Movant disputes that the other satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Accordingly, the Court will look to the second prong of the test set forth above and will adopt a rebuttable presumption that the most adequate plaintiff is the "person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

While there is some dispute over the precise amount of each Movant's financial interest

in this action, the Court need not resolve that dispute here.  Both Movants agree on the legal test to be applied, and agree that, irrespective of how the financial interest of each is calculated, Condra has the largest financial interest of any *individual* investor currently before the Court, and the Campfield Group, *in aggregate*, has a larger financial interest in this action than does Condra. (*See* Campfield Group Reply Mem. 3 (acknowledging that Condra's net purchase during the Class Period was 15,120 shares); Condra Mem. in Further Supp. 3 (acknowledging that the Campfield Group's approximate loss is $191,366).)  The remaining question, then, is whether the Campfield Group is an acceptable amalgamation of individual investors, or whether, instead, the PSLRA requires that its members be treated individually.

The Second Circuit has not addressed whether unrelated class members may aggregate their claims in order to establish the rebuttable presumption under the PSLRA, and Courts in this district are divided on the issue.  *Compare In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) ("Courts (including this one) view such aggregations of individual shareholders with disapproval."), *and In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff."), *with Barnet*, 236 F.R.D. at 162 ("[T]here can be no doubt that the PSLRA contemplates that some 'groups' can serve as lead plaintiff . . . ."), *and Weltz*, 199 F.R.D. at 132-33 (noting that some courts "have permitted the aggregation of claims for the purposes of becoming lead plaintiff").

There is no dispute that the plain language of the PSLRA permits appointment of a person or group of persons to be lead plaintiff.  *See Barnet*, 236 F.R.D. at 162.  Courts that have declined to aggregate the claims of individual plaintiffs have focused on the underlying purpose

of the lead plaintiff appointment procedure under the PSLRA.  As these courts have noted, one of

Congress's primary concerns in adopting the PSLRA was preventing "the manipulation by class

action lawyers of the clients whom they purportedly represent."  H.R. Conf. Rep. 104-369, at 31,

*as reprinted in* 1995 U.S.C.C.A.N. 730, 730.  For example, the *Pfizer* court held:

> To allow an aggregation of unrelated plaintiffs to serve as lead
> plaintiffs defeats the purpose of choosing a lead plaintiff.  One of
> the principal legislative purposes of the PSLRA was to prevent
> lawyer-driven litigation.  Appointing lead plaintiff on the basis of
> financial interest, rather than on a "first come, first serve" basis,
> was intended to ensure that institutional plaintiffs with expertise in
> the securities market and real financial interests in the integrity of
> the market would control the litigation, not lawyers.  To allow
> lawyers to designate unrelated plaintiffs as a "group" and aggregate
> their financial stakes would allow and encourage lawyers to direct
> the litigation.  Congress hoped that the lead plaintiff would seek
> the lawyers, rather than having the lawyers seek the lead plaintiff.

233 F.R.D. at 337 (internal citations omitted); *see also Maiden v. Merge Tech., Inc.*, Nos. 06-C-

349, 06-C-356, 06-C-375, 06-C-431, 06-C-483, 06-C-493, 06-C-519, 2006 WL 3404777, at *3

(E.D. Wis. Nov. 21, 2006) (stating that allowing lawyers to "designate unrelated plaintiffs as a

'group'" would thwart the purpose of the PSLRA); *Ruland v. Infosonics Corp.*, Nos. 06CV1231,

06CV1233, 06CV1309, 06CV1331, 06CV1378, 06CV1435, 2006 WL 3746716, at *4 (S.D. Cal.

Nov. 7, 2006) (agreeing with other courts holding that some collection of individuals are not

groups for purposes of the PSLRA).

    In contrast, courts that have permitted the aggregation of claims have focused on the text

of the PSLRA itself, which expressly contemplates that a "group of persons" may serve as lead

plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Barnet*, 236 F.R.D. at 162 ("[T]he plain

language of the [PSLRA] provides for [group lead plaintiffs]."); *In re Milestone Scientific Sec.*

*Litig.*, 183 F.R.D. 404 (D.N.J. 1998) ("The PSLRA expressly provides a 'group of plaintiffs' may be deemed most adequate plaintiffs.").

The question most pertinent here is what is a "group of persons," as that phrase appears in the PSLRA. The Court is persuaded by those cases that hold that this language is to be construed in context. *See, e.g., In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (noting that the plaintiff selection clauses of the PSLRA "necessarily must be construed in light of the language and purpose of the Reform Act as a whole, which, as noted, contemplates that client-driven litigation will replace lawyer-driven litigation"); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 409 (D. Minn. 1998) (adopting "rule of reason" to determine the acceptability of the "group" of plaintiffs to best represent the interests of the putative class). An amalgam of unrelated individuals undoubtedly is different than a joint venture of closely-related parties. *See Barnet*, 236 F.R.D. at 163 ("This is simply not a case where a group of unrelated investors has been cobbled together as a 'group' to displace a single competing institutional investor, or a smaller, closely-related group of investors. If it were, the Court would be reluctant to recognize the group under the statute."). For example, while the PSLRA does not limit the number of persons who can be in a lead plaintiff group, it is obvious that a group consisting of 100 persons, even if they collectively had the largest financial interest in a litigation, likely would be a poor choice for lead plaintiff. Such a group inevitably would lack the type of leader demanded by the PSLRA, and each member of the group likely would have a relatively insignificant financial interest in the outcome of the litigation. *See Chill*, 181 F.R.D. at 409 ("The assertion can legitimately be made that the larger the number of proposed Lead Plaintiffs, the greater the dilution of the control that those Plaintiffs maintain over the conduct of the putative class

action . . . .").

The Court recognizes, of course, that in this case, the Campfield "group" is not made up of 100 persons, and some of the group's members are even married, but the group as a whole shares only this lawsuit in common. There is no leader among this group, and it is undeniable that Condra has a far greater financial interest in this case than any of the individuals that make up the Campfield Group. During the Class Period, Condra acquired more than twice as many net shares of PXRE securities than did any individual member of the Campfield Group. Under these circumstances, it is not only more likely that Condra will exercise better control over the actions of his counsel than will the Campfield Group, but, indeed, one cannot but suspect that the Campfield Group – comprised, as it is, of disparate and apparently unrelated plaintiffs – is itself the result of the type of lawyer-driven action that the PSLRA eschews. *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. at 337 (noting that allowing lawyers to designate a "group" of unrelated investors would undermine Congress' intent of having the lead plaintiff direct the lawyers in the litigation). Thus, in the context of the PSLRA and this case, the Court finds that the Campfield Group is an inferior lead plaintiff to Condra. Accordingly, the Court finds that Condra is the presumptive lead plaintiff under the PSLRA. Because there is no indication that Condra is subject to unique defenses, *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), or will be unable to fairly and adequately protect the interests of the class, *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb), this presumption is not rebutted and Condra's motion to be appointed lead plaintiff is granted.

C.  Lead Counsel

Finally, the Court must appoint lead counsel. Under the PSLRA, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the

class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Condra moves to have its counsel, Pomerantz Haudek

Block Grossman & Gross LLP ("Pomerantz Haudek"), appointed as lead counsel. As noted,

Pomerantz Haudek is experienced in class action and shareholder derivative lawsuits. The Court

finds that Pomerantz Haudek is capable of adequately representing the putative class in this

action and Condra's motion is granted.

### III.  Conclusion

For the foregoing reasons, the Class Actions are hereby consolidated under the caption

"In re PXRE Group, Ltd. Securities Litigation." Condra is appointed lead plaintiff and Condra's

counsel, Pomerantz Haudek, is appointed lead counsel. The Clerk of the Court is directed to

terminate the Motions (Docket Nos. 10, 13).


SO ORDERED.

Dated:        March **30** , 2007
              New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE


11